IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHERYL PEEBLES,**<br><br>          **Plaintiff,**<br><br>     v.<br><br>**CHAIN IQ AMERICAS, INC.,**<br><br>          **Defendant.** | **CIVIL ACTION NO. 23-2100** |

### MEMORANDUM OPINION

**Rufe, J.**                                                                                                                              **February 6, 2025**

      Plaintiff Cheryl Peebles filed suit against Defendant Chain IQ Americas Inc. ("Chain IQ"), alleging that she was wrongfully terminated from her employment due to her race. The Court dismissed the Amended Complaint and granted Plaintiff leave to file a further amended complaint. Chain IQ now has moved to dismiss the Second Amended Complaint. For the reasons explained below, Chain IQ's motion will be granted, and Peebles's Second Amended Complaint will be dismissed with prejudice.

**I.     BACKGROUND**[1]

      **A.     Factual Background**

      Cheryl Peebles is an African-American woman who worked for Chain IQ as a Sourcing Technology Services Expert from July 18, 2022 to January 10, 2023.[2] While her work was remote, Peebles worked and lived in the Commonwealth of Pennsylvania.[3] Peebles was assigned

---

[1] The facts alleged in the Second Amended Complaint are taken as true for the purposes of the Motion to Dismiss. Much of the factual and procedural background in this can be found in the Court's Memorandum Opinion dismissing the First Amended Complaint [Doc. No. 23]. The relevant background is set forth herein as necessary to provide context.

[2] Second Am. Compl. [Doc. No. 25] at ¶¶ 14-15.

[3] Second Am. Compl. [Doc. No. 25] at ¶ 17.

to perform work on behalf of UBS, a client of Chain IQ.[4] UBS is a multinational investment bank and financial service company, and is the largest private bank in the world.

Before starting work with Chain IQ, Peebles was informed by a member of Chain IQ's Human Resources department ("HR") that HR had received Peebles's pre-employment background check results and Plaintiff was "cleared" to start work.[5] In November of 2022, after Peebles had been working at Chain IQ for four months, she was advised by another member of Chain IQ's HR that Peebles was "off the UBS account because there were allegedly 'flags' on her pre-employment background check."[6] Peebles continued to work on the UBS account after November 2022.[7] Chain IQ's CEO advised Peebles of these flags in December of 2022 and informed her again that she was no longer permitted to work for Chain IQ based on the background check.[8]

B. **Procedural Background**

Peebles filed this suit alleging racial discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and a claim under the Pennsylvania Criminal History Record Information Act ("CHRIA").[9] Chain IQ filed a Motion to Dismiss with an attached declaration that included Peebles's social security number.[10] The Court *sua sponte* struck the declaration for

---

[4] Second Am. Compl. [Doc. No. 25] at ¶ 18.
[5] Second Am. Compl. [Doc. No. 25] at ¶ 20.
[6] Second Am. Compl. [Doc. No. 25] at ¶ 21.
[7] Second Am. Compl. [Doc. No. 25] at ¶ 24.
[8] Second Am. Compl. [Doc. No. 25] at ¶ 22.
[9] Compl. at ¶ 1 [Doc. No. 1].
[10] Mot. Dismiss [Doc. No. 9].

improperly disclosing personal identifying information.[11] Peebles then filed an Amended Complaint alleging two new counts: invasion of privacy and retaliation under Title VII.[12]

Chain IQ filed a motion to dismiss the Amended Complaint, which the Court granted.[13] The racial discrimination claims were dismissed because Peebles "failed to provide anything more than a 'legal conclusion couched as a factual allegation,'" and failed to plead sufficient allegations that "raise a reasonable expectation that discovery will reveal that Chain IQ intended to discriminate against [Peebles] on the basis of race." [14]

The Court determined that the retaliation claim failed because it was "utterly lacking in any well-pleaded facts to suggest that Chain IQ took an adverse action, which caused 'material adversity' to [Peebles]."[15] In addition, Peebles "provided 'no basis to infer that [Chain IQ's] conduct was in retaliation for Plaintiff's discrimination lawsuit . . . ."[16]

Peebles also failed to state a claim under the CHRIA claim, as "[i]t is well-established that the CHRIA only applies to hiring decisions, not termination decisions."[17] The Amended Complaint did not allege facts that her employment was subject to a background check.[18]

Finally, the Court dismissed Peebles's invasion of privacy claim, because as a matter of law "[t]he brief disclosure of Peebles's social security number on the public docket, which was quickly stricken by this Court, cannot be deemed a highly offensive intrusion nor is it the sort of

---

[11] Order [Doc. No. 12].

[12] Am. Compl. [Doc. No. 14] at ¶¶ 36-37, 46-47.

[13] Order [Doc. No. 24].

[14] Mem. Op. [Doc. No. 23] at 4, 6.

[15] Mem. Op. [Doc. No. 23] at 5.

[16] Mem. Op. [Doc. No. 23] at 5 (citing *Middlebrooks v. Bonner Kiernan Trebach & Crociata*, 671 F. Supp. 2d 61, 63 (D.D.C. 2009)).

[17] Mem. Op. [Doc. No. 23] at 7.

[18] Am. Compl. [Doc. No. 14] at ¶ 35.

conduct that would 'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'"[19]

Peebles then filed her Second Amended Complaint, alleging racial discrimination and retaliation under Title VII, racial discrimination under 42 U.S.C. § 1981, and a violation of CHRIA.[20] Chain IQ moved to dismiss the Second Amended Complaint, which Plaintiff opposed.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] The Court must accept as true all factual allegations in the Second Amended Complaint and draw all reasonable inferences in favor of Plaintiffs.[22] However, Plaintiff must plead "more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level."[23] A court may deny further leave to amend where the plaintiff was put on notice as to the deficiencies of their complaint, but failed to resolve them in an Amended Complaint.[24]

---

[19] Mem. Op. [Doc. No. 23] at 8 (citing *Hull v. Curtis Publishing Co.*, 182 Pa. Super. 86, 99 (Pa. Super. Ct. 1956)).

[20] *See* Second Am. Compl. [Doc. No. 25] [Doc. No. 25] at ¶ 1.

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[22] Fed. R. Civ. P. 12(b)(6); *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023).

[23] *Twombly*, 550 U.S. at 555 (citation omitted).

[24] *See Krantz v. Prudential Invs.*, 305 F.3d 140, 144 (3d Cir. 2002).

### III.   DISCUSSION

#### A.   Count One: Title VII of the Civil Rights Act of 1964, Racial Discrimination and Retaliation

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[25]

To survive a motion to dismiss, Peebles must provide "sufficient factual matter that permits the reasonable inference that [she] was terminated or retaliated against because of her race, sex, and/or national origin."[26]

The Second Amended Complaint adds no substantive allegations that would establish that Peebles was discriminated against because of her race. Peebles has added four new statements to Count One of her complaint; two of these statements merely restate that Peebles is African-American and that she was qualified for her position.[27] Peebles further alleges that she "suffered an adverse employment action because she was terminated or not hired by Defendant (although she had been working [f]or Defendant for four months when she was advised there [were] 'flags' on her pre-employment background check, the purported reason for her dismissal was a failure to pass that background check)."[28] Peebles additionally alleges that the reasons for her termination were pretextual because she was told she had cleared the pre-employment background check and later told she had not passed the same background check, and she was

---

[25] 42 U.S.C. § 2000e-2(a)(1).

[26] *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010).

[27] Second Am. Compl. [Doc. No. 25] at ¶¶ 29-30.

[28] Second Am. Compl. [Doc. No. 25] at ¶ 31.

permitted to work on UBS matters and continued to be employed even after she was advised there were flags on the background check.[29]

As Chain IQ argues, these statements assert no new facts that sufficiently plead that Peebles was terminated because of her race, but simply re-allege that she is a member of a protected status and that she was terminated from her position. Although Peebles argues that Chain IQ has not explained or mentioned why Peebles was told she had passed the background check and was later told she did not, and that Chain IQ has not explained whether other work was available for Peebles,[30] neither of these contentions supports an inference of racial discrimination.[31]

Peebles' retaliation claim is similarly flawed. To state a claim for retaliation, Peebles must plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence . . . (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."[32]

Peebles initially based her retaliation claim on Chain IQ's disclosure of Peebles's social security number in an attachment to the first Motion to Dismiss.[33] In the Second Amended Complaint, Peebles appears to have removed her allegations regarding retaliation but merely keeps the claim in the title for Count One.[34] Peebles also did not address the retaliation claim in

---

[29] Second Am. Compl. [Doc. No. 25] at ¶ 32.

[30] Pl.'s Opp. [Doc. No. 33] at 5.

[31] *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).

[32] *Connelly*, 809 F.3d at 789 (internal citations omitted).

[33] The Court struck the filing under Local Rule 5.1.3. Order [Doc. No. 12]. Peebles's initial claim was dismissed because a counsel's failure to redact a social security number could not plausibly state a clam for retaliation for Peebles's discrimination lawsuit. Mem. Op. at 5 [Doc. No. 23].

[34] *See* Second Mot. Dismiss [Doc. No. 28] at 8.

her Opposition to Chain IQ's Motion to Dismiss.[35] It thus appears that the retaliation claim has been withdrawn, but in any event there is no basis for such a claim in the Second Amended Complaint. As Peebles has failed to plausibly allege racial discrimination or retaliation under Title VII, Count One of Peebles's Second Amended Complaint will be dismissed.

### B. Count Two: 42 U.S.C. § 1981, Racial Discrimination

A plaintiff can establish a right to relief for racial discrimination under § 1981 by showing "(1) that [s]he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts."[36] A plaintiff must "initially plead . . . that, but for race, [she] would not have suffered the loss of a legally protected right."[37]

Peebles re-alleges her Title VII claim in its entirety and adds that she was "subjected to the foregoing actions because she is African-American."[38] Therefore, Peebles has failed again to plead any facts that show an intent to discriminate from Chain IQ. Peebles merely asserts that she is African American and that she was terminated. As with Peebles's Amended Complaint, "[e]ven construed in the light most favorable to the nonmoving party, there are no allegations in the Amended Complaint that raise a reasonable expectation that discovery will reveal that Chain IQ intended to discriminate against Plaintiff on the basis of race."[39] Count Two will be dismissed.

---

[35] *See* Pl.'s Opp. [Doc. No. 33].

[36] *Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 753 (E.D. Pa. 2014) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)).

[37] *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 589 U.S. 327, 341 (2020) (emphasis added).

[38] Second Am. Compl. [Doc. No. 25] at ¶ 36.

[39] Mem. Op. [Doc. No. 23] at 6; *see also Pryor*, 288 F.3d at 569.

### C. Count Three: Pennsylvania Criminal History Record Information Act (CHRIA)

Lastly, Peebles alleges that Chain IQ violated the CHRIA when Chain IQ did not provide Peebles with written notice that Defendant's decision was based in whole or in part on criminal history record information.[40] The Court previously dismissed Peebles's claim because Peebles failed to allege facts that her employment was subject to a background check, and under Peebles's own allegations Peebles was terminated, not hired.[41]

Peebles has failed to allege any new facts to support her claim under the CHRIA. The only addition to Count Three of Peebles's Second Amended Complaint is a parenthetical: "Plaintiff did not receive written notice that Defendant's decision to fire her **(or not to hire her)** was based in whole or part on criminal history record information."[42] This parenthetical cannot save the claim; the factual allegations establish that Peebles was terminated from her position at Chain IQ months after she was hired. As the Court previously held, "[i]t is well-established that the CHRIA only applies to hiring decisions, not termination decisions."[43] Peebles cannot assert that she was terminated from Chain IQ in the discrimination claim,[44] and in the next breath assert a claim that only applies to hiring,[45] with no new factual allegations to support these claims. Count Three will be dismissed.

---

[40] Second Am. Compl. [Doc. No. 25] at ¶ 39.

[41] Mem. Op. [Doc. No. 23] at 7.

[42] Def.'s Ex. A [Doc. No. 28-2] at ¶ 39.

[43] Mem. Op. [Doc. No. 23] at 7.

[44] Second Am. Compl. [Doc. No. 25] at ¶ 32.

[45] Second Am. Compl. [Doc. No. 25] at ¶¶ 38-41.

## IV. CONCLUSION

For the reasons stated above, Chain IQ's Motion to Dismiss will be granted. Because this is Peebles's Second Amended Complaint and Peebles failed to cure the deficiencies after the Court dismissed her Amended Complaint, the Motion will be granted with prejudice.[46] An order will be entered.

---

[46] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Peebles has already had leave to amend her First Amended Complaint. Despite counsel from the Court on allegations the First Amended Complaint lacked, Peebles failed to include any additional claims or allegations that assert her termination was due to her race. Allowing Peebles a Third Amended Complaint would not change this, and thus, granting leave to amend would be "futile."